CIVIL ACTION FILE NO.: 4:09-CV-00031-D

| | | |
|---|---|---|
| ELIZABETH S. PETTET, DIANE L. KATZENBERGER, and LYNWOOD H. KEITH, JR., individually and on behalf of all others similarly situated, Plaintiffs | ) ) ) ) ) | |
| v. | ) ) ) | SETTLEMENT ORDER AND FINAL JUDGMENT |
| STATE FARM FIRE AND CASUALTY COMPANY, Defendant | ) ) ) ) | |

This action was heard on October 29, 2010, before the undersigned, pursuant to the Order Preliminarily Approving Settlement and Approving Notice to Class Members (the "Preliminary Approval Order") entered on June 28, 2010, for the purpose of determining: (i) whether the settlement of the action, on the terms and conditions set forth in the Stipulation and Agreement of Settlement previously submitted to the Court ("Settlement Agreement"), and attached hereto as Exhibit A, should be approved as fair, reasonable and adequate; (ii) the amount of attorneys' fees and expenses to award counsel for Plaintiffs; and (iii) whether a Settlement Order and Final Judgment should be entered.

Having conducted the analysis required by the statute, the Court finds and concludes for purposes of settlement only that the requirements of Fed.R.Civ.P. 23(a) and Fed.R.Civ.P. 23(b)(3) have been satisfied, and that the settlement is fair, adequate, and reasonable.

Having considered the record in this action, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

The "Definitions" section of the Settlement Agreement [Doc. No. 38-2 and Exhibit A

hereto] is incorporated herein by reference. All capitalized terms used in this Order have the meaning set forth in the Settlement Agreement unless otherwise expressly indicated.

1.     This action is maintainable as a class action for settlement purposes only on behalf of a class ("the Settlement Class") consisting of

> All persons who, during the Class Period, were insured by a State Farm Homeowners or PPC Commercial insurance policy covering a home, dwelling or other structure or personal property within the State of North Carolina. Excluded from the Settlement Class are (a) all judicial officers in the United States and their families through the third degree of relationship; and (b) all officers, directors, employees or counsel of State Farm.

2.     For settlement purposes only, the Court finds that the prerequisites of Fed.R.Civ.P. 23 are satisfied and the Court hereby certifies the foregoing defined Settlement Class pursuant to Fed.R.Civ.P. 23(b)(3).

3.     The Court finds that counsel for the Plaintiffs, Pope, McGlamry, Kilpatrick, Morrison & Norwood, LLP and Ward and Smith, P.A. are competent to serve as Class Counsel and will fairly and adequately represent the interests of the class.

4.     Based on the evidence presented at the hearing, the Court finds that notice has been given to the class pursuant to the Preliminary Approval Order, and that the mailing of the Notice of Proposed Class Action Settlement and Release of Claims in accordance with the methodology adopted pursuant to this Settlement Agreement was the best notice practicable, satisfied due process requirements, and provided Class Members with fair and adequate notice of the hearing and adequate information concerning the hearing, the right to be excluded from the Class, the settlement, and the right of counsel for Plaintiffs to apply for an award of attorneys' fees and expenses.

5.     The terms of the settlement, as set forth in the Settlement Agreement, are hereby determined to be fair, reasonable, and adequate. Accordingly, said Settlement Agreement,

including each of its respective terms and conditions, is hereby finally approved.

6. The Court hereby enters judgment fully and finally dismissing and terminating all claims, on the merits, against State Farm Fire and Casualty Company ("State Farm").

7. The Settling Class Members, those persons bound by the Settlement Agreement and subject to this Settlement Order and Final Judgment, consist of all persons included within the Settlement Class except such persons who requested to be excluded in a timely manner and who are identified on a list the parties hereto are ordered to maintain for a period of three (3) years from the date of this Order.

8. Pending the Effective Date, neither the Plaintiffs, nor any Settling Class Member, either directly, representatively, or in any other capacity, shall prosecute any action or proceeding in any court, tribunal or other forum asserting any of the Released Claims against the Released Parties.

9. As of the Effective Date:

   (a) All Settling Class Members are deemed to have released and forever discharged the Released Parties from any and all Released Claims.

   (b) All Settling Class Members are forever barred from asserting any of the Released Claims against any of the Released Parties.

   (c) All Settling Class Members are deemed to have covenanted and agreed (a) that they will forever refrain from instituting, maintaining or proceeding against any Released Party on any Released Claim, including Released Claims known and not now known, suspected, or claimed, that they have or hereafter may have against the Released Parties; and (b) that they release the Released Parties from each and every such Released Claim.

10. As of the Effective Date, all Settling Class Members are permanently enjoined from filing, commencing, prosecuting, continuing, litigating, intervening in, participating in as

class members or otherwise, or seeking to certify a class in, or organizing owners of policies of State Farm into a separate class of persons, as a purported class action (including by seeking to amend a pending complaint to include class allegations) in or receiving any benefits or other relief from, any other lawsuit, arbitration or administrative, regulatory or other proceeding or order in any jurisdiction, based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in or underlying this action which qualify them as Class Members.

11.    As of the Effective Date, all Settling Class Members are forever barred and permanently enjoined from filing, commencing or prosecuting any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction), if such other lawsuit is based on or relates to the claims and causes of action, or the facts and circumstances relating thereto, in this action and/or the Released Claims.

12.    In accordance with Section 15 of the Settlement Agreement, as of the Effective Date, the sum of $5,000,000 (and, if applicable, the Supplemental Fee referenced in Sections 15.2 and 15.5 of the Settlement Agreement) is hereby awarded as the entire attorneys' fees and costs in this action, covering all fees for legal services, all costs, all disbursements, all out-of-pocket expenses and all other expenditures in connection with this litigation. This amount shall be allocated among all counsel representing Plaintiffs in accordance with their agreement. This sum shall be paid as provided in the Settlement Agreement.

13.    State Farm has denied liability in this matter, and this settlement does not constitute an admission of liability or wrongdoing. Neither this Final Judgment, the Settlement Agreement, the fact of settlement, the settlement proceedings, settlement negotiations, nor any

related document, shall be used as an admission of any act or omission by State Farm or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by State Farm in any proceeding other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement.

14.     State Farm shall have no responsibility for and shall have no liability whatsoever with respect to the allocation among Class Counsel and/or any other Person who may assert a claim thereto, of any attorneys' fees or expenses that the Court may award.

15.     The parties are hereby authorized without further approval from the Court to adopt such amendments or modifications of the Settlement and all exhibits thereto as shall be consistent in all respects with this Settlement Order and Final Judgment and do not limit the rights of members in the Settlement Class.

16.     Elizabeth S. Pettet, Diane L. Katzenberger, and Lynwood H. Keith, Jr. are hereby awarded $5,000 each as an incentive payment for their service as class representatives, to be paid in accordance with Section 15.7 of the Settlement Agreement.

17.     The Court retains jurisdiction over this Settlement to the extent necessary to implement, effectuate and administer this Settlement and this Settlement Order and Final Judgment, including, but not limited to, any issues arising from the Court's award of attorneys' fees.

This **29** day of **October**, 2010.

_____
JAMES C. DEVER, III
United States District Judge

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

CIVIL ACTION FILE NO.: 4:09-CV-00031-D

| | |
|---|---|
| ELIZABETH S. PETTET, DIANE L.<br>KATZENBERGER, and LYNWOOD H.<br>KEITH, JR., individually and on behalf of<br>all others similarly situated,<br>           Plaintiffs<br><br>         v.<br><br>STATE FARM FIRE AND CASUALTY<br>COMPANY,<br>           Defendant | STIPULATION AND AGREEMENT<br>OF SETTLEMENT |

Elizabeth S. Pettet, Diane L. Katzenberger, Lynwood H. Keith, Jr., and State Farm Fire and Casualty Company, by and through their undersigned Counsel, hereby enter into this Agreement of Compromise and Settlement, subject to the approval of the United States District Court for the Eastern District of North Carolina, Eastern Division, and pursuant to Federal Rule of Civil Procedure 23.

The undersigned Parties hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement, this Action shall be fully and finally settled and compromised upon the following terms and conditions, subject to Court approval.

## 1. Background

1.1. This Action, filed on February 25, 2009, relates to how State Farm utilizes Public Protection Classification ("PPC") ratings that it receives from the Insurance Services Office, Inc. ("ISO") in its calculation of premiums for insurance policies. Plaintiffs have alleged that since February 25, 2005, State Farm has not properly applied ISO PPC ratings as a factor in its calculation of premiums on some insurance polices issued in North Carolina. Plaintiffs contend that as a result of State Farm's failure to apply ISO PPC ratings properly, certain State Farm policyholders in North Carolina have been overcharged for their insurance premiums, and that

6980536v1

this overcharge constitutes a breach of contract by State Farm. Plaintiffs further alleged that such failures will result in overcharges on policy renewals if not corrected.

1.2. This Action was initially filed as a proposed class action on behalf of all North Carolina policyholders who are currently insured or who have been insured under homeowners policies issued by State Farm during the three (3) years preceding the filing of Plaintiffs' Complaint. Plaintiffs further asserted allegations against State Farm on behalf of a nationwide class of State Farm policyholders. After appropriate discovery, Plaintiffs have determined that only a North Carolina class can be properly certified in this case. Plaintiffs have therefore agreed to amend their Complaint and delete any allegations relating to a nationwide class.

1.3. State Farm has answered Plaintiffs' Complaint, denied all liability, and further alleged the defenses set forth in State Farm's answer. Although State Farm believes that this Action is without merit, it has concluded that resolving these claims under the terms of this Agreement is desirable to reduce the time, risk and expense of defending the Action and to resolve finally and completely the Action and all of the Released Claims.

1.4. This Settlement is a compromise of disputed claims made to avoid the uncertainty, risks, costs, and delays of further litigation. State Farm does not admit liability to any Class Member (as defined herein) and State Farm does not admit liability in any case.

1.5. After analyzing the relevant facts and applicable law, and recognizing the burdens, risks, uncertainties, time and expense of litigation, as well as the advantages of terms and procedures for a fair and efficient resolution of Class Members' claims under this Agreement, Class Counsel and State Farm have concluded that this Agreement is a fair, equitable and just resolution of the Released Claims.

2. **Definitions**

As used in this Agreement, including the foregoing background section and the appendices and exhibits to this Agreement, the following terms have the meanings set forth

2

below. As used herein, the plural of any defined term includes the singular thereof, and the singular of any defined term includes the plural thereof as the context may require.

2.1. "Action" means the above-captioned lawsuit pending in the United States District Court for the Eastern District of North Carolina, Eastern Division, styled *Elizabeth S. Pettet, et al. v. State Farm Fire and Casualty Company*, Case No. 4:09-CV-00031-D.

2.2. "Administrative Costs" means all costs associated with the implementation and administration of this Settlement, including, without limitation, costs of providing notice, fees and expenses of the Administrator, Taxes and Tax Expenses. "Administrative Costs" do not include payments to Class Counsel or the Class Representative pursuant to Section 15 of this Agreement, or payments to Settling Class Members pursuant to Section 12 of this Agreement.

2.3. "Administrator" means the entity appointed by the Court to administer the Notice Plan, as provided in Section 5 of this Agreement. It is anticipated that the Administrator will be Rust Consulting, Inc.

2.4. "Agreement" or "Settlement Agreement" means this Agreement of Compromise and Settlement, together with all appendices and exhibits substantially in the forms attached to this Agreement and including any modifications made with the written consent of all Parties, as provided for in paragraph 21.7 of this Agreement.

2.5. "Business day" (whether capitalized or lower case) means any day except a Saturday, Sunday or other day on which federal courts are authorized by law to be closed.

2.6. "Class Counsel" means any member or associate of Pope, McGlamry, Kilpatrick, Morrison & Norwood, LLP, and Ward and Smith, P.A.

2.7. "Class Period" means the time period from February 25, 2005 to the date of Preliminary Approval. [This will be identified as a specific date in the Class Notice.]

2.8. "Class Member" means a person included within the Settlement Class.

2.9. "Class Representative" means Elizabeth S. Pettet, Diane L. Katzenberger, and Lynwood H. Keith, Jr., and/or any other individuals approved by the Court as class representatives.

2.10. "Complaint" means the Complaint filed in the Action, together with any and all amendments and supplements thereto.

2.11. "Court" means the United States District Court of the Eastern District of North Carolina.

2.12. "Current Policyholder" means a Class Member who is insured by State Farm on the day that the Court issues the Preliminary Approval Order.

2.13. "Defendant" means State Farm.

2.14. "Defendant's Counsel" means Leonard, Street and Deinard, P.A., King and Spalding, LLP, and Hedrick, Gardner, Kincheloe & Garofalo, LLP.

2.15. "Effective Date" means the date on which the time for appeal from the Final Judgment approving the Agreement has elapsed without any appeals being filed; or, if appeals are filed, the date on which all appeals from the Final Judgment approving this Agreement or from any appellate court decisions affirming the Final Judgment have been exhausted, and no further appeal may be taken.

2.16. "Eligible Claimant" means a Potential Claimant whom State Farm identifies as being due a premium refund under the terms of this Agreement.

2.17. "Fairness Hearing" means the hearing to be conducted by the Court, after notice to the Settlement Class, for the purpose of considering final approval of this Agreement pursuant to Federal Rule of Civil Procedure 23(e) and Class Counsel's application for an award of attorneys' fees and expenses.

2.18. "Final Judgment" has the same meaning as "Settlement Order and Final Judgment."

2.19. "Former Policyholders" means Class Members who are no longer insured by State Farm on a North Carolina Homeowners or PPC Commercial policy on the day that the Court issues the Preliminary Approval Order.

2.20. "Homeowners" insurance policy as used in this Agreement (including as used in the definition of the Settlement Class) excludes insurance policies covering mobile homes.

6960536v1                                4

2.21. "ISO" means the Insurance Services Office, Inc.

2.22. "ISO Location®" means the proprietary computer database marketed and sold by the ISO which, when integrated into an insurer's computer system, provides the insurer with PPC Codes.

2.23. "Location Integration Date" means the date upon which the integration of the ISO Location® database into State Farm's internal computer system is fully functional and being utilized in the production of rating information at State Farm. This integration shall be accomplished as soon as practicable. It is the Parties' intention that the Location Integration Date shall not be later than one year after the Effective Date. In the event State Farm cannot through commercially reasonable means implement the ISO Location® database within this one year period, the Parties agree to petition the Court for an extension of this time period not to exceed ninety (90) days.

2.24. "NCDI" means the North Carolina Department of Insurance.

2.25. "Notice Plan" means the plan for providing notice of class certification, the Settlement, and this Agreement to the Settlement Class, as described in Section 2 of this Agreement, including the Settlement Notice substantially in the form attached hereto as Exhibit 2.

2.26. "Objection Deadline" has the meaning given to that term in paragraph 7.1 of this Agreement.

2.27. "Opt-Out Deadline" has the meaning given to that term in paragraph 6.1 of this Agreement.

2.28. "Parties" means the Class Representatives and State Farm.

2.29. "Person" (whether capitalized or lower case) means a natural person, marital community, corporation, partnership, limited partnership, limited liability company, mutual company, association, joint stock company, estate, legal representative, trust, unincorporated organization, governmental entity or department, public service corporation, and any other type of legal entity.

5

2.30. "Potential Claimant" means a Class Member whom State Farm, through its use of the ISO Location® database, identifies as having a PPC Code different from that currently maintained by State Farm in its underwriting system.

2.31. "Preliminary Approval Order" means the Court's order, in substantially the form attached hereto as Exhibit 1, preliminarily approving this Agreement pursuant to Federal Rule of Civil Procedure 23(e).

2.32. "PPC Codes" means the Public Protection Classification™ rating codes that the ISO maintains and distributes for fire protection areas throughout the United States.

2.33. "PPC Commercial" policies refers to those commercial insurance policies that, during the Class Period, had premiums that varied based upon PPC codes: rental dwelling policies and (for a portion of the Class Period) rental condominium unit owners policies. Provided, however, if a PPC Commercial policy was only in force during a period when premiums were not affected by PPC codes, then a policyholder insured by such a policy only during that period would not be included in the Settlement Class.

2.34. "Released Claims" means any and all past or present claims or causes of action, however denominated (including any claims in law, equity or arbitration), of whatever kind or description, direct or indirect, in law or equity, in tort, contract, or otherwise, known or unknown, occurring at any time, which:

        (a)    were or could have been asserted in the Complaint or in any Amended Complaints; or

        (b)    are based on or relate to excessive charges of or incorrect determinations of premiums for homeowners insurance coverage as a result of State Farm's alleged failure to correctly apply the proper fire protection classes (including but not limited to PPC codes); or

        (c)    assert fraud in the inducement of this Settlement,

provided, however, that Released Claims do not include claims that have been reduced to judgment in a trial court, whether or not that judgment has been resolved on appeal. The term "or" as used in this definition of Released Claims (and in all releases and covenants not to sue) is inclusive. The release of claims in two or more categories connected by the term "or" will release all claims in each such category.

2.35. "Released Parties" means State Farm and its parents, subsidiaries, affiliates and re-insurers, and each and all such entities, each and all of their respective predecessors, successors and assignees, attorneys, accountants, representatives, past or present officers, inside and outside directors, representatives, employees, and agents. To the extent of their liability for the alleged acts or omissions giving rise to the Released Claims, "Released Parties" also means State Farm Insurance Agents, together with each of their current and former agents, employees, officers, directors, attorneys, owners, shareholders, associated and affiliated companies, parents, divisions, subsidiaries, successors, assigns, and insurers.

2.36. "Renewal Period" means the period of time beginning 10 days after the Location Integration Date and ending 365 days thereafter.

2.37. "Request for Exclusion" means a valid, timely, written request to be excluded from the Settlement Class as set forth in paragraph 6.1 of this Agreement.

2.38. "Settlement" means the terms and conditions of settlement as set forth in this Agreement.

2.39. "Settlement Class" means all persons who, during the Class Period, were insured by a State Farm Homeowners or PPC Commercial insurance policy covering a home, dwelling or other structure or personal property within the State of North Carolina. Excluded from the Settlement Class are (a) all judicial officers in the United States and their families through the third degree of relationship; and (b) all officers, directors, employees or counsel of State Farm.

2.40. "Settling Class Member" means any person falling within the definition of the Settlement Class, except for persons who file timely and valid Requests for Exclusion from the Settlement Class and do not timely withdraw such Requests for Exclusion.

2.41. "Settlement Fund" has the meaning given to that term in Section 8 of this Agreement.

2.42. "Settlement Notice" means the form of notice substantially in the form attached hereto as Exhibit 2.

2.43. "Settlement Order and Final Judgment" means the order and final judgment approving and incorporating this Settlement as binding upon the Parties entered by the Court in the form attached hereto as Exhibit 3 without material modification (except as agreed in writing by the signatories hereto).

2.44. "State Farm" means State Farm Fire and Casualty Company.

2.45. "State Farm Insurance Agent" means any person authorized by written agreement with State Farm or State Farm's associated and affiliated companies to solicit applications for insurance and financial services; collect premiums, fees and charges; countersign and deliver policies; reinstate and transfer insurance; and/or assist customers and cooperate with representatives of State Farm or State Farm's associated and affiliated companies in reporting and handling claims.

2.46. "Taxes" has the meaning given to that term in paragraph 8.3 of this Agreement.

2.47. "Tax Expenses" has the meaning given to that term in paragraph 8.3 of this Agreement.

3. **Settlement Class**

3.1. Plaintiffs will seek, and State Farm will not oppose, certification of the Settlement Class by the Court, pursuant to Federal Rule of Civil Procedure 23, for the purpose of settlement only. At the same time, Plaintiffs will seek, and State Farm will not oppose, approval of

Plaintiffs as Class Representatives and the following attorneys as Class Counsel: Pope, McGlamry, Kilpatrick, Morrison & Norwood, LLP, and Ward and Smith, P.A.

3.2.  State Farm conditionally agrees and consents to certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only, and for the sole purpose of creating the Settlement Class. State Farm's agreement is contingent upon: (1) the Parties' execution of this Agreement; (2) the Court's approval of this Agreement; and (3) the occurrence of the Effective Date. If this Agreement is for any reason not approved or the Effective Date does not occur, State Farm reserves its right to reassert all of its objections and defenses to certification of any class, and neither Plaintiffs nor Class Counsel will offer State Farm's conditional agreement to certification of the Settlement Class as evidence in support of a motion to certify any class.

3.3.  Plaintiffs will request that notice and an opportunity to request exclusion from the Settlement Class be provided to all persons within the Settlement Class. State Farm will not oppose such request.

4.  **Preliminary Approval**

Plaintiffs, Class Counsel, and State Farm shall promptly submit this Agreement and Settlement to the Court and jointly request that the Court enter a Preliminary Approval Order substantially in the form attached hereto as Exhibit 1:

4.1.  certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23 for purposes of settlement only;

4.2.  preliminarily approving the Settlement;

4.3.  setting a date for the Fairness Hearing, no earlier than 90 days after notice of this proposed Settlement is provided to state and federal officials consistent with the requirements of 28 U.S.C. § 1715, to determine (a) whether the proposed Settlement should be approved as fair, reasonable and adequate to Class Members, (b) whether Final Judgment should be entered

dismissing with prejudice the Action and any other actions filed by Class Members, and (c) whether Class Counsel's application for fees and expenses should be approved;

    4.4.    approving the Notice Plan;

    4.5.    prescribing a period of time during which persons within the Settlement Class may file Requests for Exclusion;

    4.6.    providing that any objections to the Agreement, the Settlement, or Class Counsel's application for an award of attorneys' fees and expenses shall be considered by the Court at the Fairness Hearing only if, on or before a date to be specified in the Preliminary Approval Order, the Class Member making any objection shall mail a copy of his, her or its written objection(s) and/or notice of intent to appear at the Fairness Hearing (any of which shall set forth briefly each objection and all reasons and substantiation therefore) to the Administrator;

    4.7.    providing that, pending final determination of whether the Settlement should be approved, neither the Plaintiffs, nor any Class Member, either directly, representatively, or in any other capacity, shall commence or prosecute any action or proceeding in any court or tribunal asserting any of the Released Claims against the Released Parties.

**5.    Notice Plan**

    5.1.    On or before (a) July 16, 2010, or (b) the date five business days after the entry of the Preliminary Approval Order, whichever date is later, State Farm shall deliver to the Administrator a list that includes the names and addresses of all persons who during the Class Period, were insured by a State Farm Homeowners or PPC Commercial insurance policy covering a home, dwelling or other structure or personal property within the State of North Carolina (hereinafter "Potential Class Members.") For each Potential Class Member, State Farm shall include the most current address that is in State Farm's system as the mailing address in its list.

5.2.    Prior to mailing the Settlement Notice, the Administrator shall update the addresses provided by State Farm through the use of the National Change of Address database, and shall use the most current address reasonably available to the Administrator.

5.3.    Within 30 days following the Administrator's receipt of the list of Potential Class Members identified in Section 5.1, the Administrator shall mail, or cause to be mailed, copies of the Settlement Notice, substantially in the form attached hereto as Exhibit 2, by first class United States mail, postage prepaid, to all Potential Class Members at the most recent address obtained by the methods described above. If a notice is returned to the Administrator with a forwarding address, the Administrator will re-send the notice and update its database to reflect the updated address information for that Class Member. It is agreed by the Parties that this procedure constitutes an appropriate, reasonable, and practicable method to locate current addresses for Class Members and provide notice thereto. No additional efforts shall be required.

5.4.    In addition to mailing notice to Potential Class Members, the Administrator shall establish a website and post on that website the Settlement Agreement, Settlement Notice and frequently-asked questions and answers.

5.5.    The names, addresses, telephone numbers, and any other personal identifying information of all Potential Class Members shall be kept confidential by the Administrator and not disclosed to any person except as ordered by the Court upon good cause shown, and shall be used only for the purposes of this Agreement. Whenever in a report, the Administrator or any other Party needs to identify a specific policyholder, it can refer to the policy number, which is not required to be redacted from publicly available documents.

5.6.    The Administrator shall file with the Court a report on efforts undertaken to implement the Notice Plan at or before the Fairness Hearing. Copies shall be provided to Class Counsel and State Farm.

**6. Requests for Exclusion**

6.1. Any person within the Settlement Class definition who wishes to be excluded from the Settlement Class must mail a written Request for Exclusion from the Settlement Class to the Administrator by the deadline established in the Preliminary Approval Order ("Opt-Out Deadline"). The Parties will ask the Court to establish an Opt-Out Deadline of no later than 45 calendar days following the date on which the Settlement Notice is first mailed by the Administrator. Any Request for Exclusion must be signed by the person seeking exclusion, or the authorized representative of an entity seeking exclusion, and must clearly state his, her or its desire to be excluded from the Settlement Class, and include his, her or its name, address and telephone number. A valid and timely Request for Exclusion made by any co-insured on an insurance policy covered by this Agreement binds all other co-insureds on the same insurance policy. Any person within the Settlement Class definition who mails a Request for Exclusion to the Administrator may withdraw such Request for Exclusion, and thus elect to be included as a Settling Class Member, at any time prior to the Opt-Out Deadline.

6.2. The Administrator will promptly provide unredacted copies of any Requests for Exclusion, and any withdrawals thereof, to State Farm and Class Counsel. On the date of the Fairness Hearing, counsel for State Farm and Class Counsel will jointly submit to the Court a report identifying all persons making Requests for Exclusion that were not thereafter timely withdrawn and the date on which each request was received by the Administrator). To the extent the Court requires filing of the report, it shall be filed under seal.

6.3. Any person within the Settlement Class definition who does not file a timely Request for Exclusion from the Settlement Class, or who timely withdraws a Request for Exclusion, shall be deemed a Settling Class Member for all purposes under this Agreement.

**7. Objections to Settlement**

7.1. Any Class Member may object to the proposed Settlement. The Class Member, or personal counsel retained at the Class Member's expense, must mail the objection to the

Administrator by the deadline established in the Preliminary Approval Order ("Objection Deadline"). The Parties will ask the Court to establish an Objection Deadline of no later than 45 calendar days following the date on which the Settlement Notice is first mailed by the Administrator. Objections must be in writing and must provide a detailed description of the nature and basis for each objection, the Class Member's name, address and telephone number, and, if represented by personal counsel, counsel's name, address and telephone number. Prior to the Fairness Hearing, the Administrator will file with the Court any timely objections received, and will promptly provide unredacted copies of any timely objections received to Class Counsel and State Farm.

7.2. Any Class Member may appear at the Fairness Hearing, either in person or through personal counsel, retained at the Class Member's expense, to voice an objection to the Settlement, if the Class Member has filed a timely objection pursuant to paragraph 7.1, or to comment on the Settlement. Class Members or their attorneys who wish to appear at the Fairness Hearing must make such a request in writing and mail it to the Clerk of the United States District Court for the Eastern District of North Carolina with copies to counsel for State Farm and Class Counsel prior to the Objection Deadline. The written request to appear must include the name, address and telephone number of the person who will appear at the Fairness Hearing and a copy of the written objection to the Settlement.

7.3. Any Class Member who fails to comply with the provisions of paragraphs 7.1 and 7.2 shall waive and forfeit any and all rights that he, she or it may have to appear separately and/or object to or comment on the Settlement.

## 8. Settlement Fund

8.1. Within ten (10) business days after the Effective Date, State Farm shall create a Settlement Fund in the amount of $30,000,000 for the purposes of paying: (a) the amount that the Court awards Class Counsel as attorneys' fees and litigation expenses; (b) refunds to Eligible Claimants; and (c) any taxes due on the Settlement Fund as set forth in paragraph 8.3.

8.2. If, at any time during the Renewal Period, the balance of the Settlement Fund, including interest, drops below $1,000,000, State Farm agrees to contribute additional amounts in increments of $250,000 so that the balance at all times exceeds $1,000,000 until State Farm in good faith believes that all payments contemplated by paragraph 8.1 have been made. The amounts set forth in paragraphs 8.1 and 8.2 (together with incentive payments, if any, awarded by the Court in accordance with paragraph 15.7) shall be the exclusive monetary obligation of State Farm in connection with the Agreement and the Settlement, and Plaintiffs and Class Counsel agree that they shall not seek any further money, funds or other remuneration from State Farm in connection with this Settlement, whether for attorneys' fees, litigation expenses, Administrative Costs, or anything else.

8.3. All Taxes arising with respect to the income earned on the Settlement Fund, including any Taxes that may be imposed upon State Farm and all expenses and costs incurred in connection with the operation and implementation of this Section 8 (including, without limitation, expenses of a tax attorney or consultant and mailing and distribution costs and expenses relating to filing, or failing to file) and any return described in this Section 8 of this Agreement ("Tax Expenses"), shall be paid out of the Settlement Fund as Administrative Costs.

8.4. Any check or draft to a Settling Class Member that is returned with a forwarding address will be re-sent to the address provided. Any check or draft that is returned as undeliverable, with no forwarding address, or is still uncashed ninety (90) days after the date of the instrument, shall revert to State Farm.

8.5. State Farm shall close the Settlement Fund one hundred twenty (120) days following the issuance of the final check or draft issued pursuant to this Settlement. Any amount remaining in the Settlement Fund, including accrued interest, and any settlement checks sent to Settling Class Members that are undeliverable after ninety (90) days of the date of the instrument or are not cashed by Settling Class Members within ninety (90) days of the date of the instrument, will revert back to State Farm.

**9.    Prospective Implementation of Enhanced PPC Monitoring Program**

9.1.    The Parties acknowledge that State Farm calculates premiums in North Carolina for Homeowners policies and PPC Commercial policies covering a home, dwelling or other structure or personal property through the use of PPC Codes maintained and updated by the ISO. The PPC Code is a factor in the calculation of premiums for all North Carolina Homeowners policies and PPC Commercial policies covering a home, dwelling or other structure or personal property in the State of North Carolina. The Parties further acknowledge and stipulate that the use of the ISO Location® database is a reasonable method for maintaining and updating PPC Codes for State Farm policyholders in North Carolina.

9.2.    Accordingly, State Farm agrees that as a condition of this Settlement it shall license the ISO Location® database. State Farm will thereafter integrate that database into State Farm's internal computer system so as to utilize the system to maintain and update PPC Codes for all North Carolina Homeowners policies and all PPC Commercial policies covering a home, dwelling or other structure or personal property in the State of North Carolina.

9.3.    The Parties further acknowledge that State Farm may develop and seek the NCDI's approval to use an alternative rating system or procedure that does not use PPC Codes to calculate Homeowners or PPC Commercial insurance premiums, such as sub-zone rating factors. If the NCDI approves State Farm's use of an alternative rating system, nothing herein shall be construed to obligate Start Farm to maintain and use the ISO Location® database to assign policyholders to rating classes prospectively.

9.4.    Subject to Section 9.3, State Farm currently intends to maintain the ISO Location® database for at least three (3) years following the Location Integration Date. State Farm shall, however, retain the discretion to change the method by which it acquires and updates protection classes (including its use of ISO Location®), provided that, as a prerequisite for terminating the use of the ISO Location® database within three years from the Location

Integration Date, State Farm must seek and be granted approval by the NCDI, and provide written confirmation of such approval to Class Counsel prior to implementing any such change.

**10.    Statewide Audit of Current Policyholders and Identification of Eligible Claimants**

10.1.  Beginning ten (10) days following the Location Integration Date, State Farm shall commence a statewide audit of PPC Codes for all Homeowners policies and PPC Commercial policies covering a home, dwelling or other structure or personal property in the State of North Carolina as follows. State Farm shall run the address for each such property through the ISO Location® database to determine the PPC Code for the address as of the dates corresponding to the beginning of each policy period during the Class Period that the policy was in force. For each of these dates, State Farm shall then compare the PPC Code in the ISO Location® database in effect for that address at the beginning of that policy period to the PPC Code that was used for determining the premium for that address at the beginning of that policy period.

10.2.  If, for any of the dates identified in Section 10.1, the process identified in Section 10.1 returns a PPC Code for an address that is different from the PPC Code that was used in determining the premium for that address, State Farm shall identify any such policyholder as a Potential Claimant. State Farm shall compile a list of Potential Claimants including the policyholder's name, most recent address and policy number.

10.3.  With respect to any Potential Claimant, State Farm shall utilize its underwriting system to determine whether the change in PPC Code for the Potential Claimant would have had any effect on the Potential Claimant's premiums during the Class Period. If the change in PPC Code would have resulted in the policyholder paying a higher premium during the Class Period, State Farm will not seek to collect any additional premium for coverage during the Class Period. If the change in PPC Code would have resulted in the Policyholder paying a lower premium during the Class Period, State Farm will identify such policyholder as an Eligible Claimant. State Farm shall compile a list of Eligible Claimants including the policyholder's name, most recent address and policy number.

Case 4:09-cv-00031-D   Document 38-2   Filed 06/23/10   Page 16 of 50

Case 4:09-cv-00031-D   Document 63   Filed 10/29/10   Page 21 of 36

10.4.  During the initial phase of the audit, State Farm will use the ISO Location® database to make those determinations that can be made by comparing the PPC Code in the ISO Location® database to the PPC Code that was used for determining the premium for that address.  State Farm anticipates that, as to most Class Members, this initial phase of the audit will result in a final determination as to whether the policyholder is an Eligible Claimant.  State Farm will complete this initial phase of the audit within ninety (90) days following the Location Integration Date.

10.5.  For some Class Members, the initial phase of the audit described in Section 10.4 will not result in a final determination as to whether the policyholder is an Eligible Claimant. For example, if the ISO Location® database produces a choice of two PPC codes for a particular address (e.g. 5/9, 6/9 or otherwise), State Farm will need to undertake a manual review in an effort to determine the PPC code that would have been applicable during each relevant policy term.  State Farm will complete this manual review within one year following the Location Integration Date.

10.6.  Upon the renewal of all North Carolina policies during the Renewal Period, State Farm shall apply the PPC Code as determined through the process described in Sections 10.1 through 10.5.

## 11.    Former Policyholders

11.1.  Prior to the Location Integration Date, State Farm shall compile a list of all Former Policyholders, and shall include the Former Policyholder's name, last known address, and other appropriate identifying information.

11.2.  Beginning ten (10) days following the Location Integration Date, State Farm shall conduct a statewide audit of PPC Codes for all Former Policyholders identified on the list referenced in Section 11.1 in the same manner it audits PPC Codes for Current Policyholders, as described in Sections 10.1 through 10.5.

## 12. **Payment to Eligible Claimants**

12.1.  Within sixty (60) days following State Farm's identification of a Current or Former Policyholder as an Eligible Claimant, State Farm will calculate the amount of the refund due through use of the ISO Location® database. Specifically, State Farm will determine through the use of data supplied by ISO when the PPC Code for the Eligible Claimant's address first differed from the PPC Code maintained in State Farm's current underwriting system. State Farm will then calculate the premium difference for the period in which the PPC Code differed. The refund amount to be paid to the policyholder shall be an amount equal to the premium difference from (a) the beginning of the first policy period during which application of the PPC Code in the ISO Location® database would have resulted in lower premiums (*see* Sections 10.1 to 10.3) or (b) February 25, 2005, whichever is later, to the beginning of the first policy period when the application of the PPC Code in the ISO Location® database would no longer have resulted in lower premiums (*see* Sections 10.1 to 10.3).

12.2.  The refunds specified in Section 12.1 shall be increased by simple interest. The interest shall be applied to the premium overcharge on each policy term. The interest rate shall be determined separately for each policy term. The interest rate shall be the average quarterly interest rate for the quarter in which that policy term began, based on the 26-week U.S. Treasury Bill rate, as published on the TreasuryDirect website (http://www.treasurydirect.gov/RI/OFAuctions?form=histQuery). The time period for the interest for each policy term shall be from the beginning date of that policy term or February 25, 2005, whichever is later, to the date the refund is calculated.

12.3.  If an Eligible Claimant has already received a refund from State Farm due to State Farm's application of PPC Codes, the amount of the previously issued refund will be deducted from the amount payable to the Class Member. If a Class Member is an Eligible Claimant on more than one policy during the Class Period, the Class Member will be issued a refund for each such qualifying eligible claim.  State Farm may combine any such payments due to Class

Members into one check or draft for the qualifying claims, so long as State Farm identifies the qualifying claims negotiated thereby.

12.4. State Farm will issue a check or draft to the Eligible Claimant from the Settlement Fund equal to the premium refund due plus interest as set forth in these sections. The check or draft will contain terms requiring negotiation within ninety (90) days of the instrument's date and shall be accompanied by a letter to the Eligible Claimant. By application of the time periods set forth in Sections operation of Sections 10.4 and 12.1, State Farm will issue checks to those Eligible Claimants that can be identified as set forth in Section 10.4 (i.e. without the need for manual review) no later than 150 days following the Location Integration Date.

## 13. Reporting and Monitoring

13.1. During the Renewal Period, Plaintiffs' Counsel shall monitor State Farm's compliance with the terms of the Settlement and the implementation of the methodology used to identify Eligible Claimants, calculate refunds and interest, and issue refunds.

13.2. Within thirty (30) days after State Farm has completed the initial phase of the audit as described in Section 10.4, State Farm will provide Plaintiffs' counsel with a report containing the following information: (a) the number of policyholders whose PPC Codes were examined, (b) the number of policyholders who were determined to be Eligible Claimants based on the initial phase of the audit, (c) the number of policyholders who were determined not to be Eligible Claimants based on the initial phase of the audit, and (d) the number of policyholders as to whom a determination could not be made without a manual review.

13.3. On or before one hundred eighty (180) days following the Location Integration Date, and again on or before one year after the Location Integration Date, State Farm will provide Plaintiffs' counsel with a report containing the following information with regard to the policyholders identified in Section 13.2(d): (a) the number of policyholders as to whom State Farm had completed its audit (including any manual review) and (b) the number of such policyholders who were determined to be Eligible Claimants.

13.4. On or before one hundred fifty (150) days following the Location Integration Date, and every sixty (60) days thereafter (until the final report referenced in Section 13.5 is provided), State Farm will provide Plaintiffs' counsel with a report containing the following information as to Eligible Claimants: (a) the number of Eligible Claimants who have been paid refunds and (b) the amount of refunds and interest paid.

13.5. After State Farm has completed the process identified in Sections 10-12, State Farm will provide Plaintiffs' Counsel with a report containing the following information: (a) the number of policyholders who have been audited pursuant to Sections 10 and 11 of the Agreement; (b) the number of Potential Claimants identified; (c) the number of Eligible Claimants identified; and (d) the amounts of refunds and interest paid to Eligible Claimants.

13.6. If at any time during the Renewal Period Plaintiffs' Counsel question State Farm's implementation of the methodology used to identify Eligible Claimants, calculate refunds and interest, and cause the issuance of refunds, Plaintiffs will first discuss these concerns with State Farm. State Farm agrees to cooperate with Plaintiffs' Counsel in these monitoring efforts, and Plaintiffs' Counsel agree that their requests for cooperation will be reasonable and not unnecessarily burdensome.

## 14. Agreements of Plaintiffs' Counsel

14.1. If a Class Member or former Class Member who has opted out of the Settlement Agreement initiates contact with Plaintiffs' Counsel regarding legal representation as to a matter unrelated to the subject matter of this Action, Plaintiffs' Counsel are not prohibited by this Settlement Agreement from providing such unrelated representation. This provision shall be construed so as not to violate any professional or ethical considerations

14.2. Within sixty (60) days after the Renewal Period, Plaintiffs' Counsel shall return to State Farm all documents and all copies of such documents produced by State Farm to Plaintiffs during the course of this litigation, including, but not limited to, all electronic data, and all copies thereof, including any copies provided by Plaintiffs' Counsel to third persons.

**15.    Attorneys' Fees & Expenses; Award to Class Representative**

15.1.    The amount of attorneys' fees and litigation expenses to be paid to Class Counsel shall be determined by the Court.

15.2.    Prior to the Effective Date, Class Counsel shall file an Application for Attorneys' Fees and Expenses seeking attorneys' fees and expenses in the amount of

        (a)    $5,000,000, and, if applicable,

        (b)    a contingent Supplemental Fee equal to 20% of the difference between:

                (i)    the estimated amount of the payments to be made by State Farm to Eligible Claimants under Section 12.1, and

                (ii)    $25,000,000.

If the amount of the payments made by State Farm under Section 12.1 do not exceed $25,000,000, then (1) there is no Supplemental Fee and (2) Class Counsel shall have no obligation to return to State Farm any portion of the fees and expenses awarded pursuant to Section 15.2(a) above.

State Farm agrees that it will not oppose Class Counsel's Application for Attorneys' Fees and litigation expenses, provided that the request does not exceed the amounts stated in this paragraph.

15.3.    Attorneys' fees and litigation expenses awarded by the Court to Class Counsel pursuant to paragraphs 15.1 and 15.2 will be paid from the Settlement Fund.  Class Members who are personally represented by their own attorneys in connection with the Settlement shall be responsible for the fees and expenses of their individual attorneys.

15.4.    Payment to Class Counsel of all Court-awarded attorneys' fees and litigation expenses pursuant to paragraph 15.2(a) shall occur within ten (10) days after the Effective Date.

6980536v1                                   21

15.5.  If the amount of the payments made by State Farm under Section 12.1 exceed $25,000,000, then, within thirty days after making an additional contribution to the Settlement Fund pursuant to Section 8.2, State Farm will estimate the total amount it expects to pay to Eligible Claimants as set forth above in Section 15.2(b).  State Farm will estimate that amount based on the information State Farm will have learned in conducting the audit described in Section 10 .  Within thirty (30) days after making that estimate, State Farm will provide written notice of the estimate to Class Counsel.    Within thirty (30) days of Class Counsel being provided with any estimate made by State Farm pursuant to paragraph 15.2(b) of this Agreement, Class Counsel shall have the right to question any such estimate.  If such questions are raised, the parties agree to cooperate to reach agreement on the amount State Farm expects to pay to Eligible Claimants and the amount of attorneys' fees and expenses, if any, State Farm will pay pursuant to paragraph 15.2(b) of this Agreement.  State Farm agrees to cooperate with Class Counsel by providing commercially reasonable information to Class Counsel regarding State Farm's estimates, and Class Counsel agree that their requests for cooperation will be reasonable and not unduly burdensome.

15.6.  Within thirty (30) days following agreement between State Farm and Class Counsel as to the estimates set forth in paragraphs 15.2(b) and 15.5 of this Agreement, State Farm shall pay any attorneys' fees and expenses awarded pursuant to paragraph 15.2(b) of this Agreement.  This payment will not be subject to a subsequent adjustment based on any later calculations of the actual amounts of payments made to Eligible Claimants.

15.7.  Class Counsel may petition the Court for payment of an award to each Plaintiff to compensate him or her for the effort, time and expense spent by him or her in connection with the prosecution of this action.  Plaintiffs and Class Counsel agree that they will not seek an award in excess of $5,000 for each Plaintiff.  State Farm agrees that it will not oppose Plaintiffs' and Class Counsel's petition for an award to Plaintiffs, provided that it does not exceed the amount stated in this paragraph.  Any amount awarded by the Court to Plaintiffs pursuant to this

paragraph will be paid separately by State Farm to the Plaintiffs within ten (10) business days after the Effective Date.

## 16.    Release, Waiver and Covenant Not to Sue

16.1.    Upon the Effective Date of this Agreement, in consideration of this Settlement and the benefits extended to the Settlement Class pursuant to this Agreement, all Settling Class Members release and forever discharge the Released Parties from any and all Released Claims.

16.2.    Upon the Effective Date of this Agreement, the Released Parties are not, and in the future shall not be, subject to liability or expense of any kind to Settling Class Members with respect to any of the Released Claims. The provisions of this Agreement shall be the exclusive remedy of all Settling Class Members against the Released Parties. Upon the Effective Date, each Settling Class Member shall be forever barred from asserting any of the Released Claims against any of the Released Parties. Settling Class Members expressly agree that this release shall be, and may be raised as, a complete defense to and will preclude any action or proceeding encompassed within the terms of this release.

16.3.    Upon the Effective Date of this Agreement, each Settling Class Member shall be deemed to have covenanted and agreed (a) that he, she or it will forever refrain from instituting, maintaining or proceeding against any Released Party on any Released Claim, including Released Claims known and not now known, suspected, or claimed, that he, she or it has or hereafter may have against the Released Parties; and (b) that he, she or it releases the Released Parties from each and every such Released Claim.

16.4.    Settling Class Members acknowledge and agree that the Released Claims include claims that Settling Class Members do not know or suspect to exist in their favor at the time of the release of the Released Parties and which, if known by them, might have affected their decision to settle and release the Released Claims or take any other action, including, but not limited to, the decision not to object to this Agreement. Settling Class Members expressly waive any and all rights that they may have under any statute, regulation, administrative adjudication,

or common law principle that would limit the effect of the Release provided in this Agreement to the claims actually known or suspected to exist at the time of this Agreement.

17.    **Final Judgment**

17.1.  If the Settlement is approved by the Court following the Fairness Hearing, the Parties shall request that the Court enter a Final Judgment, substantially in the form attached hereto as Exhibit 3:

17.1.1.    (a)    confirming certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23 and applicable law;

17.1.2.    (b)    finding that notice was provided to the Settlement Class in accordance with the Preliminary Approval Order and that the Notice Plan fully satisfies the requirements of Federal Rule of Civil Procedure 23 and due process;

17.1.3.    (c)    finding that notification to appropriate federal and state officials was given in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715;

17.1.4.    (d)    approving the Settlement as fair, reasonable and adequate to Class Members in accordance with Federal Rule of Civil Procedure 23;

17.1.5.    (e)    directing implementation of the Settlement in accordance with its terms;

17.1.6.    (f)    dismissing with prejudice the Action;

17.1.7.    (g)    providing that all Settling Class Members conclusively compromise, settle, discharge, dismiss and release the Released Claims;

17.1.8.    (h)    permanently enjoining Settling Class Members from initiating, asserting, prosecuting, or litigating against the Released Parties any actions involving the Released Claims;

17.1.9.    (i)    providing that neither this Agreement, approved or not approved, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or

implementation of this Agreement, shall be admissible in evidence for any purpose in this or any other proceeding, except that this Agreement, and any order granting preliminary or final approval of this Agreement, will be admissible for the purpose of obtaining approval of, implementing, and/or enforcing this Agreement and as otherwise provided in paragraph 16.4;

17.1.10.　　(j)　　reserving jurisdiction, without affecting the finality of the Final Judgment, over implementation, administration and enforcement of the Settlement, and other matters ancillary to the Settlement;

17.1.11.　　(k)　　finding that the Final Judgment is a final judgment pursuant to Federal Rule of Civil Procedure 54(a) or, alternatively, that there is no just reason for delay and the Final Judgment is a final judgment pursuant to Federal Rule of Civil Procedure 54(b).

17.2.　　Entry of a Final Judgment approving this Agreement is a condition precedent to the Parties' respective rights and obligations under this Agreement.

## 18.　Termination

18.1.　State Farm shall have the right, in its sole discretion after reviewing the number of opt-outs, objectors, and pending litigation, to withdraw from this Agreement if the number of Class Members who elect to be excluded from the Settlement Class exceeds the number set forth in a supplemental letter agreement executed, but not filed, herewith. State Farm may exercise this right within ten (10) business days after the Opt-Out Deadline. In order to invoke this right, State Farm must file and serve by facsimile and U.S. Mail a document entitled Notice of Nullification of Settlement. Neither Plaintiffs nor any Class Member nor Class Counsel shall be permitted to seek enforcement of the Settlement or any of its terms against State Farm should State Farm elect to nullify the Settlement pursuant to this paragraph.

18.2.　This Agreement shall terminate and become null and void upon the occurrence of any of the following events:

18.2.1.      (a)      State Farm exercises its right to nullify the Settlement as provided in paragraph 18.1;

18.2.2.      (b)      The Court refuses to certify the Settlement Class;

18.2.3.      (c)      The Court denies preliminary approval of the Settlement;

18.2.4.      (d)      The Court denies approval of the Settlement following the Fairness Hearing;

18.2.5.      (e)      Certification of the Settlement Class and/or approval of the Settlement is reversed on appeal; or

18.2.6.      (f) the Effective Date does not occur.

18.3.   If this Agreement should terminate or become null and void for any reason, then:

18.3.1.      (a)      This Agreement and all negotiations and proceedings and releases relating thereto shall be without prejudice as to the rights of any and all Parties to this Agreement, and Parties to this Agreement shall be restored to their respective positions existing as of October 29, 2009;

18.3.2.      (b)      Plaintiffs and State Farm shall jointly move that any order entered pursuant to this Agreement be vacated and void and all findings withdrawn; and

18.3.3.      (c)      All amounts remaining in the Settlement Fund, together with accrued interest, shall be returned to State Farm.

18.4.

## 19.   No Admissions

19.1.   Neither this Agreement, nor any exhibit, document or instrument delivered hereunder, is intended to be or shall be construed as or deemed to be evidence of an admission or concession by State Farm or the Released Parties of an interpretation of, or course of conduct in connection with, the policy language and forms of the Subject Insurance Policies, or of any

liability or wrongdoing by State Farm, or of the truth of any allegations asserted by Plaintiffs, Class Members, or any other person.

19.2. The Parties expressly acknowledge and agree that this Agreement, along with all related drafts, motions, court papers, conversations, negotiations, mediations and correspondence, including statements made in mediations or written submissions to the mediator, constitute an offer to compromise and a compromise within the meaning of Federal Rule of Evidence 408, North Carolina Rule of Evidence 408, and any equivalent rule of evidence of any state.

19.3. Neither this Agreement, approved or not approved, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, shall be admissible in evidence in this or any other proceeding for any purpose, including as evidence of an interpretation of, or course of conduct in connection with, the policy language and forms of the Subject Insurance Policies. Without limitation of the foregoing, nothing contained in this Agreement, approved or not approved, nor any exhibit, document or instrument delivered hereunder, nor any statement, transaction or proceeding in connection with the negotiation, execution or implementation of this Agreement, shall be given any form of *res judicata*, collateral estoppel or judicial estoppel effect against State Farm or the Released Parties in any administrative or judicial forum or proceeding.

19.4. Notwithstanding the foregoing, this Agreement, any order granting preliminary or final approval to this Agreement and any appellate decision affirming Final Judgment is admissible as provided in this paragraph.

19.5. This Agreement is admissible by any Party for the purpose of obtaining approval of, implementing, and/or enforcing this Agreement.

19.6. This Agreement, any order granting preliminary or final approval of this Agreement, any appellate decision affirming Final Judgment, and any proceedings and submissions in connection with this Agreement, are admissible for purposes of determining

Class Counsel's application for attorneys' fees and costs or in connection with any appeal of an award of Class Counsel's attorneys' fees and costs in this Action.

19.7. This Agreement, any order granting preliminary or final approval of this Agreement, and any appellate decision affirming Final Judgment, may be pleaded by State Farm or the Released Parties as a full and complete defense (including any defense based upon release, *res judicata*, or injunction) to any action, suit or other proceeding that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims; and this Agreement, any order granting preliminary or final approval to this Agreement, and any appellate decision affirming Final Judgment, or any other proceedings in connection therewith, may be filed, offered or submitted by State Farm or the Released Parties or otherwise used in support of such defense.

## 20. Deadlines and Notices

20.1. Whenever this Agreement requires notice or a document to be given to State Farm, it shall be sent to:

| | |
|---|---|
| Todd A. Noteboom | C. Neal Pope |
| LEONARD, STREET & DEINARD, P.A. | POPE, MCGLAMRY, KILPATRICK, |
| 150 South Fifth Street, Suite 2300 | MORRISON & NORWOOD, LLP |
| Minneapolis, MN 55402 | 318 11th Street, 2nd Floor |
| | Columbus, GA 31901-2515 |
| *Attorneys for Defendant* | *Attorneys for Plaintiffs* |

20.2. Whenever this Agreement requires notice or a document to be given to the Administrator, it shall be sent to the address stated in the Settlement Notice.

20.3. Whenever this Agreement provides for a document or form to be sent to the Administrator, State Farm, or Class Counsel prior to a certain date or deadline, the document or form will be deemed timely (a) if sent by First Class U.S. Mail and postmarked by the U.S. Postal Service on or before the applicable deadline or (b) if sent by any other method and received by the Administrator, State Farm, or Class Counsel, whichever is applicable, on or before the applicable deadline. If a postmark is not legible, the document shall be deemed to

Case 4:09-cv-00031-D  Document 38-2  Filed 06/23/10  Page 28 of 50
Case 4:09-cv-00031-D  Document 63  Filed 10/29/10  Page 33 of 36

have been postmarked three business days before it is received by the person to whom it was sent.

## 21. General Provisions

    21.1. Class Representatives, Class Counsel, and State Farm shall cooperate, assist and undertake their best efforts to complete any actions implementing the terms of this Agreement or any order of the Court related to the implementation of this Agreement.

    21.2. Plaintiffs, Class Counsel, and State Farm agree that the terms of this Agreement were not based solely on the consideration provided, but were also based on (a) vigorous arm's-length negotiations among counsel for the Parties; (b) the assessment of counsel for the Parties of the strengths and weaknesses of the claims asserted in the Action and the Released Claims; and (c) the expense and burden of ongoing litigation.

    .21.3. The undersigned attorneys for Plaintiffs represent and warrant that they have the authority to enter into this Agreement on behalf of the proposed Class Representatives.

    .21.4. State Farm represents and warrants that it has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby. The execution, delivery and performance by State Farm of this Agreement and the consummation by it of the actions contemplated hereby have been duly authorized by all necessary corporate action on the part of State Farm. This Agreement has been duly and validly executed and delivered by State Farm's authorized agent.

    21.5. State Farm, Plaintiffs, and Class Counsel agree that they will not issue any press releases or otherwise advise the press or media of this Agreement, but that they can respond to media inquiries. If this Agreement is approved by the Court following the Fairness Hearing, State Farm and Class Counsel agree that if State Farm chooses to do so, they will attempt to issue mutually agreed upon, joint press releases announcing such approval. State Farm and Class Counsel agree that they will not make any statements on their respective external websites regarding this Agreement.

21.6. This Settlement Agreement is intended to and shall be governed solely and exclusively by the laws of the State of North Carolina.

21.7. The terms and conditions set forth in this Settlement Agreement constitute the complete and exclusive agreement between the Parties relating to the subject matter of this Settlement Agreement, superseding all previous negotiations, representations, and understandings, and may not be contradicted or supplemented by evidence of any prior or contemporaneous agreement. The Parties further intend that this Settlement Agreement constitutes the complete and exclusive statement of its terms as between the Parties and that no extrinsic evidence whatsoever may be introduced in any judicial proceeding involving this Settlement Agreement. Prior or contemporaneous representations not contained in this Settlement Agreement shall be of no force or effect. Any modification of the Settlement Agreement must be in writing signed by Class Counsel, the Representative Plaintiffs, and State Farm.

21.8. The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. In the event of a dispute concerning the meaning of a term contained herein, no adverse inference or presumption shall be drawn based on any contention that a particular party supposedly drafted such term.

21.9. This Settlement Agreement shall be binding upon and inure to the benefit of the representative heirs, successors, and assigns of the Parties.

21.10. The waiver by one Party of any provision or breach of this Settlement Agreement shall not be deemed a waiver of any other provision or breach of this Settlement Agreement.

21.11. This Settlement Agreement shall become effective upon its execution by all of the undersigned. The Parties may execute this Settlement Agreement in counterparts, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

IN WITNESS HEREOF, the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below and agree that it shall take effect on the date it is executed by all of the undersigned.

Dated: June 21, 2010.

Todd A. Noteboom
LEONARD, STREET & DEINARD, P.A.
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402

*Attorneys for Defendant*

Michael L. McGlamry
POPE, MCGLAMRY, KILPATRICK,
MORRISON & NORWOOD, LLP
318 11th Street, 2nd Floor
Columbus, GA 31901-2515

*Attorneys for Plaintiffs*